[No. 41545.     En Banc.     April 29, 1971.]

ALBERT F. HALL et al., *Respondents*, v. AMERICAN FRIENDS SERVICE COMMITTEE, INC., *Appellant*.

*Arthur G. Barnett* and *Paul W. Robben,* for appellant.

*Searle & Baker,* by *J. D. Searle,* for respondents.

McGOVERN, J.—Defendant corporation prosecutes this appeal from a judgment ordering it to deliver to plaintiffs certain certificates of stock standing in the name of defendant.

The underlying facts are described in *Hall v. American Friends Serv. Comm.,* 74 Wn.2d 467, 445 P.2d 616 (1968), the first appeal involving this cause of action. In that decision we described the facts, in part, as follows, at page 468:

> The plaintiff wife's father, Heinrich . . . Otto . . . had been actively involved in stock investments. The parties' evidence is in dispute as to whether these investments included stock belonging to the plaintiffs. The plaintiff wife maintains that she and her husband furnished sums of money over the period 1943 to 1956 to her father to invest on their behalf in corporate stocks, with the understanding that he could retain the earnings from these investments for his personal expenses. The plaintiffs were not able to provide any record of specific sums furnished or the specific dates on which the moneys were allegedly made available. The plaintiffs testified that toward the end of his life, the father had no means of support and was supported by his children. The defendant introduced evidence which tended to establish that Otto had independent means, as well as evidence which showed that the plaintiffs were seriously in debt during the years 1956 through 1961. . . .
>
> . . .
>
> The record shows that Otto had two broker's accounts in his name, No. 781-12823 and No. 325-13029. There was a second account in the name of Mrs. Albinette O. Hall, No. 325-63188, which Otto also managed, pursuant to a power of attorney executed by Mrs. Hall in 1957, which authorized Otto "for my use and benefit to sell, sue for, demand, recover, collect and receive or hypothecate, all securities belonging to me." In October, 1959, all of the stock was sold or transferred out of Mrs. Hall's account, allegedly without her knowledge or consent. The stock or its proceeds, in the form of newly acquired shares of different corporations, then appeared in account No. 325-13029, in the name of Heinrich Otto. (Some of the stock

was first transferred to Otto's account No. 781-12823, before being transferred to account No. 325-13029.) From that time on Otto transacted various purchases and sales in the account, until June, 1963, when he donated substantially all of the stock then in the account to the defendant, the American Friends Service Committee, Inc. Otto died on July 13, 1963.

The plaintiffs brought suit on April 27, 1966, alleging that the defendant had wrongfully taken possession of stock belonging to them and had refused to deliver the stock upon demand. The complaint prayed for the recovery of the shares and for judgment for the stock's earnings while in the defendant's possession. The defendant answered, admitting it had possession of the stock but denying that the stock belonged to the plaintiffs. The defendant specifically alleged that it had received the stock as a gift from Heinrich Otto, who "was the owner and registered owner of the shares of stock pleaded in the plaintiff's complaint."

Upon the occasion of the first appeal we reversed a judgment for the defendant because the trial court's single conclusion of law was not supported by its one finding of fact. It found that Heinrich Otto was the registered owner of the shares of stock at the time they were transferred to the defendant and, therefore, concluded that plaintiffs had failed to prove that they were the owners of that stock. We pointed out that plaintiffs' claim was "not necessarily founded on record title, but rather primarily on equitable considerations" and that record title was not the only determinant. The real question before the trial court on each occasion was whether or not plaintiffs were the owners of the securities which Heinrich Otto had given to the defendant.

On this appeal, defendant first alleges that the trial court erroneously assumed that the plaintiffs had established a prima facie case of title to the certificates of stock and that it charged the defendant with the burden of rebutting that showing. Defendant also claims that even if the plaintiffs had made a prima facie showing of title, the defendant sufficiently rebutted that showing on the second trial. We

point out that in our earlier opinion on this cause, we acknowledged that plaintiffs had already made out a prima facie showing of title to the certificates of stock. We said:

> The plaintiffs had to do no more than make a prima facie showing of title, after which the burden shifted to the defendant to rebut this showing. The plaintiffs' evidence and allegations that (1) the stock in account No. 325-63188 was in Mrs. Hall's name and (2) the plaintiffs were the beneficial owners of the stock, are not directly controverted by the defendant's evidence. Having made this showing, the plaintiffs need not also prove by a preponderance of the evidence that they paid for the stock unless the defendant first comes forward with facts to rebut the plaintiffs' prima facie showing of title.

*Hall v. American Friends Serv. Comm., supra,* at 471. Although the defendant came forward at the second trial and introduced evidence in an attempt to rebut plaintiffs' showing of title, that rebuttal evidence was not sufficient in the eyes of the trial court to meet the quality of proof necessary to rebut plaintiffs' prima facie case. Plaintiffs' evidence, if believed, established considerably more than a mere prima facie case of title to the certificates of stock—it established ownership in fact. And apparently the trial court accepted plaintiffs' evidence.

Upon reversing the trial court, we noted that it had not made findings on the questions of (1) whether the stock in account No. 325-63188 was actually registered in Mrs. Hall's name and (2) what proportion of the shares once held in Mrs. Hall's name, if any, can be traced to the shares now held by the defendant. We stated that a determination of those issues was essential to the disposition of the case. In response thereto, the trial court, upon the second trial, made these findings of fact in support of its judgment for the plaintiffs:

Finding of fact 3:

> That over a period of several years, and until October 1959, various corporate stocks were carried in the name of the Plaintiff, Albinette Otto Hall.

Finding of fact 4:

That in October, 1959, Heinrich Otto, father of the said Plaintiff, Albinette Otto Hall, by use of the Power of Attorney, transferred all of said stock to his name or sold the same and bought other shares of stock with the proceeds thereof.

Finding of fact 5:

That in May, 1963, the said Heinrich Otto, without authority from Plaintiff, and without her knowledge, transferred to the Defendant corporation the following shares of stock:

Certificate
  Nos.

| | | | | | |
|---|---|---|---|---|---|
| NYH57065—100 | shares | common | stock of | RUSCO | IND. |
| NYH57066—100 | " | " | " | " | " |
| NYH57067—100 | " | " | " | " | " |
| NYH57068—100 | " | " | " | " | " |
| NYH57069—100 | " | " | " | " | " |
| NYH57070—100 | " | " | " | " | " |
| NYH57071—100 | " | " | " | " | " |
| NYH57072—100 | " | " | " | " | " |
| NYH57073—100 | " | " | " | " | " |
| NYH57074—100 | " | " | " | " | " |

Certificate
  Nos.

| | | | | | |
|---|---|---|---|---|---|
| NC  34666—100 | shares | com. | stock | American Bakeries Co. | |
| NC  34667—100 | " | " | " | " | |
| NC  34668—100 | " | " | " | " | |
| NC  34669—100 | " | " | " | " | |
| NCO52258— 40 | " | " | " | " | |

Certificate
  No.

NPO46353— 40 shares of the Series A Preferred Stock of Chicago, Milwaukee, St. Paul & Pacific Railroad Company.

That all of said shares of stock were directly traceable to the shares of stock which had been in the name of the Plaintiff, Albinette Otto Hall, and that the said stock in the name of said Plaintiff had been sold and others purchased from the proceeds of said sale and from the earnings thereof.

Defendant challenges the sufficiency of the evidence to

support those findings, arguing that plaintiffs failed to introduce direct evidence that the certificates of stock were actually "registered" in the name of Mrs. Hall and that our earlier opinion required such proof as the law of the case. It is urged that, in the absence of such proof, plaintiffs cannot be said to have been the owners of the stock represented by those certificates. We hold otherwise.

While presentation of direct evidence that Mrs. Hall was the original registered owner of the certificates of stock involved would have been the best evidence, and would under RCW 23.80.210[1] create a statutory presumption of her ownership at that time, it was not the only evidence that would support a judgment for the plaintiffs. Nor did the first opinion of this court intend to so indicate.

Findings of fact 3 and 4 are supported by substantial evidence in the record. Mrs. Albinette Hall, plaintiff wife, testified that she and her husband contributed their earnings to her father for investment purposes from the year 1943 until 1956. She said that "he [her father] was to invest our money into stocks" and that he "was in Florida in '57 then, and he wrote me and asked me to send him a Power of Attorney so he could transact my stock." She testified that it was not until after her father's death that she discovered that the certificates which had been registered in her name had been transferred into another name. She made it clear that "not to my knowledge did my father have any stock" before she and her husband gave him money to invest. She also said that her father "had no source of income other than what he got off of our stock."

---

[1] RCW 23.80.210. "The person to whom a certificate was originally issued is the person appearing by the certificate to be the owner thereof, and of the shares represented thereby, until and unless he indorses the certificate to another specified person, and thereupon such other specified person is the person appearing by the certificate to be the owner thereof, and of the shares represented thereby, until and unless he indorses the certificate to another specified person, and thereupon such other specified person is the person appearing by the certificate to be the owner thereof until and unless he also indorses the certificate to another specified person. Subsequent special indorsements may be made with like effect."

Witness David Huston testified that he was in touch with Heinrich Otto from the year 1947 until 1963 and that "I have heard him mention that he was taking care of stock for Albinette Hall. . . . he [Heinrich Otto] always said he had to live off the dividends . . . he had no other source of income . . . and he used the dividends as a source of income." He said that Mr. Otto was just handling the shares of stock for plaintiff Albinette Hall and "that they [Albinette and Albert Hall] had paid for the stock."

Witness Charles Brown testified that "He [Heinrich Otto] said several times that he was buying and selling stocks for Albinette Hall, Albinette and Alfred."

Witness Laura Brown said that she observed Albinette Hall endorse some stock certificates and give them to Heinrich Otto.

Witness Albert Hoge testified that Heinrich Otto told him that Albinette Hall had shares of stock in a railroad and a bakery (two of the three types of stocks involved here) and that he lived "on the dividends of Albinette's stocks."

Exhibit No. 12 admitted into evidence, is a letter dated December 29, 1961, from Heinrich Otto to the defendant corporation. Mr. Otto admits in that letter that the stocks which he had "were for a long time in my daughter's name." And that fact finds substantial support from other exhibits admitted into evidence. Statements of account issued by Merrill, Lynch, Pierce, Fenner and Smith show an account registered in the name of "Mrs. Albinette Otto Hall" and those statements describe the certificates of stock being held by that brokerage firm during the years 1956, 1957, 1958 and most of 1959. Those itemized securities are generally and substantially traced from October 1959, when the account name was suddenly changed from Albinette Hall to "Mr. Heinrich Otto," to the certificates which constitute the subject matter of this action.

During the second trial plaintiffs did something more than merely prove that stock certificates were originally in Albinette Hall's name, or registered in her name. They proved to the satisfaction of the trial court that they

were the owners of the stock. And because the record supports the findings of fact and conclusions of law entered by the trial court, we will not disturb them upon appeal. *Noah v. Montford,* 77 Wn.2d 459, 463 P.2d 129 (1970).

In affirming the trial court's judgment for plaintiffs, we note in the record that the defendant corporation made an exhaustive effort before and during trial to determine the true facts of the case. It is clear that defendant did not want to retain anything to which it was not legally entitled. Its good faith and thorough efforts to reach the truth in this matter were constantly and openly acknowledged by the plaintiffs and the trial court. We readily concur in that observation.

The judgment of the trial court is affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, NEILL, and STAFFORD, J.J., and RYAN, J. Pro. Tem., concur.

Petition for rehearing denied June 16, 1971.